## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SHERILLE HARRIS,                      )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          No. 4:19CV225 JCH
                                      )
MEGAN J. BRENNAN, Postmaster General, )
United States Postal Service,         )
                                      )
              Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Megan J. Brennan's Motion for Summary Judgment, filed October 2, 2020. (ECF No. 34). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Sherille Harris, a fifty-four year old Black woman who suffers from depression, began working for the Postal Service in March, 1996. (Defendant's Statement of Material Facts ("Defendant's Facts"), ¶¶ 1, 2). She began her employment as a mail handler at the Hazelwood Bulk Mail Center. (*Id.*, ¶ 1). In July, 1998, Plaintiff transferred to the Maryland Heights post office as a clerk, and she has been stationed in Maryland Heights ever since. (*Id.*).

In 2011, Plaintiff became a Level Seven, Lead Sales and Service Associate. (Defendant's Facts, ¶ 4). In that capacity she was responsible for scheduling breaks and lunches, preparing

---

[1] Defendant submitted a Statement of Material Facts in support of her Motion for Summary Judgment. In contravention of this Court's Local Rule 4.01(E), Plaintiff failed specifically to controvert any of Defendant's Facts. As a result, Plaintiff is deemed to have admitted all facts in Defendant's Statement of Material Facts. *See Turner v. Shinseki*, No. 4:08CV1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010).

stamp orders, and preparing cash deposits.  (*Id.*).  Plaintiff's responsibilities were strictly limited to window clerks, and as such, she had no experience with supervising carrier duties.  (*Id.*).

On August 28, 2013, Plaintiff filed EEO Complaint number 4J-630-0143-13, in which she alleged four bases for discriminatory harassment:  race (African-American), color (Black), sex (female), and age (then forty-six).  (Defendant's Facts, ¶ 19; Defendant's Exh. E).  Plaintiff named her co-worker, Julie Cune ("Cune")[2], and her supervisor, Karla Rose ("Rose") as the persons responsible for the discrimination.  (*Id.*).  Plaintiff asserted the following three allegedly discriminatory acts:  (1) on June 2, 2013, Cune intentionally discriminated against Claudia Dragon, a Hispanic-American customer; (2) on July 17, 2013, Cune made a racist statement when she told Plaintiff that she and her church group should visit Paula Deen's restaurant during their trip to New Orleans; and (3) on July 22, 2013, Cune intentionally discriminated against Natasha Dallas, an African-American customer.  (*Id.).*

On January 6, 2014, Plaintiff filed EEO Complaint number 4J-630-0021-14, in which she alleged the same four bases for discriminatory harassment, plus retaliation for prior EEO activity, and named Rose and Joe Dolan ("Dolan"), a postal carrier, as responsible parties.  (Defendant's Facts, ¶ 20; Defendant's Exh. F).  Plaintiff asserted the following allegedly discriminatory acts:  (1) in October and November, 2013, Plaintiff asked to be considered for a supervisor position, but Rose refused to talk to Plaintiff about the position (despite promising to do so)[3]; and (2) on November 19, 2013, Dolan yelled at Plaintiff because it was too hot in the post office.  (*Id.*).

---

[2] Cune was a fellow window clerk at the Maryland Heights post office, with whom Plaintiff shared an acrimonious working relationship.  (Defendant's Facts, ¶¶ 8, 12).  Cune left the Maryland Heights post office in or around 2015, and retired in March, 2020.  (*Id.*, ¶ 13).
[3] Plaintiff claimed the position was filled with a carrier from another post office with less experience than Plaintiff.  (Defendant's Facts, ¶ 20).

On March 27, 2014, the Agency consolidated Plaintiff's complaints, and on April 23, 2014, it recognized the following operative claims:

- Discriminatory harassment based on Race (African-American), Color (Black), Sex (Female) and Age (date of birth August 29, 1966):

  (1) July 17, 2013, when Cune made an inappropriate racial comment during a conversation.

- Discriminatory harassment based on Race (African-American), Color (Black), Sex (Female), Age (DOB:  8/29/66), and Retaliation (Prior EEO Activity[4]):

  (2) On October 23, 2013, when Plaintiff's supervisor Pat Chenot ("Chenot") emailed the Post Office Operations Manager about Plaintiff's request for a supervisor position and the e-mail was not answered, and, on October 28, 2013, and November 18, 2013, when the Post Office Operations Manager did not talk to her about the request;

  (3) On November 19, 2013, when Dolan, a postal carrier, yelled at Plaintiff about the thermostat and her supervisor did nothing;

  (4) On January 21, 2014, when Plaintiff's request for leave on January 24, 2014, was denied; on an unspecified date, when her supervisor informed Plaintiff that she would be charged with Leave Without Pay (LWOP) on January 24, 2014; and on January 27, 2014, when Plaintiff requested annual leave to attend a funeral and was told that her request would be approved only if she called in for it; and

  (5) On February 5, 2014, when Plaintiff found out that supervisor Marcia Jarrett ("Jarrett") created a fraudulent FMLA case number.

- Discriminatory harassment based on Race (African-American), Color (Black), Sex (Female), Age (DOB:  8/29/66), Mental Disability (Depression), and Retaliation (Prior EEO Activity):

  (6) On April 1, 2014, when Plaintiff was denied a break;

  (7) On April 3, 2014, when Plaintiff was given a Pre-Disciplinary Interview ("PDI"); and

  (8) On an unspecified date, when Plaintiff was denied training with the other Level Seven

---

[4] For purposes of her retaliation claim, Plaintiff identified her prior EEO activity as Case No. 4J-630-0143-13, and cited June 2, 2013, July 17, 2013, and July 22, 2013, as specific dates for her protected activity.  (Defendant's Facts, ¶ 29).  Plaintiff testified that she was "sure all of them [management] know about [her] prior EEOs, and this EEO…[f]rom the way the post office operate and everyone talk."  (*Id.*, ¶ 30, quoting Defendant's Exh. D, ECF No. 36-2, Plaintiff's August 5, 2020, Dep. at 100:17-22).  Plaintiff acknowledged, however, that she never had a conversation with Chenot, Petra Williams ("Williams"), Rose, Jarrett, Eric Simmons ("Simmons"), or Edward Mitchell ("Mitchell") about her prior EEO activity.  (*Id.;* Defendant's Exh. D at 100:23-25, 101:8-9, 20-24, 102:5-8, 9-12, 13-22, 25, 103:1-2).

clerks.[5]

- Discrimination based on Race (African-American), Color (Black), Sex (Female), Age (DOB: 8/29/66), Mental Disability (Depression):

  (9)     On April 6, 2015, Cune yelled at Plaintiff and management took no action;
  (10)    On May 6, 2015, Cune made a derogatory racial comment to a customer and management took no action; and
  (11)    On May 14, 2015, Cune backed her vehicle into Plaintiff's car.[6]

(*Id.*, ¶¶ 21-25; Defendant's Exh. K).

The administrative law judge ("AJ") held a hearing on Plaintiff's EEO complaint from October 19 to October 20, 2016.  (Defendant's Facts, ¶ 26).  On August 9, 2017, the AJ entered judgment in the Postal Service's favor, finding Plaintiff had failed to show by a preponderance of the evidence that she had suffered unlawful harassment on a protected basis.  (*Id.*, ¶ 26; Defendant's Exh. K).  Plaintiff filed an appeal with the Office of Federal Operations, U.S. Equal Employment Opportunity Commission ("OFO") on October 4, 2017, and the OFO affirmed the AJ's decision on June 14, 2018.  (*Id.*, ¶ 27; Defendant's Exh. M).  The OFO further denied Plaintiff's motion to reconsider on November 5, 2018.  (*Id.*, ¶ 28; Defendant's Exh. N).

On April 4, 2016, Plaintiff filed EEO Complaint number 4J-630-0029-16, in which she alleged the following bases for discriminatory harassment:  race (African-American), color (Black), sex (female), age (then forty-nine), retaliation for prior EEO activity, and disability (major depression).  (Defendant's Facts, ¶ 35; Defendant's Exh. O).  Plaintiff named Cune and Olethia Taylor ("Taylor"), an acting manager, as the persons responsible for the discrimination. (*Id.*).  Plaintiff asserted three allegedly discriminatory acts:  (1) on November 13, 2015, Cune told another co-worker that she was going to get a gun permit; (2) on December 7, 2015, Cune

---

[5] Plaintiff amended her EEO complaint to add the allegations in paragraphs six through eight on April 4, 2014.  (Defendant's Facts, ¶ 22).
[6] Plaintiff was granted leave to include the allegations in paragraphs nine through eleven on August 14, 2015.  (Defendant's Facts, ¶ 25).

was late for work and Taylor tried to hold Plaintiff responsible for the misconduct; and (3) on December 16, 2015, Cune called the Postal Inspectors and alleged that Plaintiff had made terroristic threats. (*Id.*).

On April 9, 2018, the AJ assigned to Plaintiff's case entered judgment in the Postal Service's favor, finding that the actions in the case, taken together, did not constitute harassment, nor had Plaintiff established they were taken due to her protected status. (Defendant's Exh. P). Plaintiff filed an appeal with the OFO, and the OFO affirmed the AJ's decision on August 14, 2018. (Defendant's Exh. Q). The opinion from the OFO informed Plaintiff that she had ninety (90) days within which to file a civil action based on the allegations in the case. (*Id.*, P. 3).

Plaintiff filed her original Complaint in this Court on February 14, 2019. (ECF No. 1). As the Court construes Plaintiff's Amended Complaint, filed April 30, 2019, Plaintiff lodges the following claims based on discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), and the Americans with Disabilities Act of 1990, as amended ("ADA"):  (1) that on July 17, 2013, Cune made a racist statement to Plaintiff about visiting Paula Deen's restaurant in New Orleans and made racist statements to two customers in May and June of 2014; (2) that on October 23, 2013, Chenot e-mailed Rose about Plaintiff's interest in becoming a supervisor and on October 28 and November 18, 2013, Rose ignored Plaintiff's inquiries about the email; (3) that on November 19, 2013, Dolan became angry with Plaintiff about the heat and nothing was done; (4) that on January 24, 2014, Plaintiff's leave request to take her mother to California was denied, and on January 27, 2014, Plaintiff was told that she had to call in to request leave to go to her uncle's funeral; (5) that on February 5, 2014, Jarrett created a fraudulent FMLA number; (6) that on April 1, 2014, Williams denied Plaintiff a break; (7) that on April 3, 2014, Williams gave

Plaintiff a PDI; (8) that Plaintiff was denied training; (9) that on April 6, 2015, Cune threatened Plaintiff during a meeting with Simmons and Mitchell; (10) that on May 6, 2015, Cune made a racist statement to a customer by telling her to put her "black baby in the cage"; (11) that on May 14, 2015, Cune backed her truck into Plaintiff's car; (12) that on December 7, 2015, Cune was late for work and Taylor tried to hold Plaintiff responsible for the misconduct; (13) that on December 16, 2015, Cune called the Postal Inspectors and alleged that Plaintiff had made terroristic threats; and (14) that on November 13, 2015, Cune told another co-worker that she was going to get a gun permit. (ECF No. 6).

As stated above, Defendant filed the instant Motion for Summary Judgment on October 2, 2020, claiming there exist no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. (ECF No. 34).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*,

477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of its pleadings.  *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor.  *Anderson*, 477 U.S. at 255.  The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id*. at 249.

## DISCUSSION

## I.   Untimely Filed Claims

In her Motion for Summary Judgment, Defendant first asserts that three of Plaintiff's claims regarding discriminatory conduct must be dismissed as untimely filed.  (*See* Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Defendant's Memo in Support"), PP. 3-4).  Specifically, Defendant maintains that because Plaintiff did not raise the claims from EEO Complaint number 4J-630-0029-16 with this Court until she filed her Amended Complaint on April 30, 2019, far more than ninety days after the OFO issued its decision on August 14, 2018, the claims are barred and must be dismissed.

An aggrieved party has ninety days to file a complaint in district court, once the EEOC has dismissed the charge and notified her of the dismissal.  *See* 42 U.S.C. § 2000e-5(f)(1).  The ninety-day period begins to run when the employee receives notice of the final agency decision, and in determining the receipt date, both the EEOC and this Court apply a rebuttable presumption of receipt within five days of mailing.  *See Moton v. Potter*, 2007 WL 956617 (OFO decision Mar. 21, 2007); *Frazier v. Vilsack*, 419 Fed. Appx. 686, 687 (8th Cir. 2011).  Plaintiff here offers no evidence to dispute the fact that she filed her Complaint regarding these allegations more than ninety days after she received notice of the OFO decision, and so

Defendant's Motion for Summary Judgment on claims 12, 13 and 14 of Plaintiff's Amended Complaint must be granted.

## II.   <u>Discrimination Claims</u>

### A.   <u>Standards</u>

As noted above, Plaintiff claims discrimination on the bases of race, color, sex, age, disability and retaliation for prior EEO activity.   When analyzing a Title VII race or color discrimination claim, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).   Under this framework, Plaintiff first must establish a prima facie case of discrimination.   "A prima facie case of discrimination requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'"   *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).   Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.   *Id.*   "If the employer meets this burden, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination."   *Id.* (internal quotation marks and citation omitted).

In order to establish a prima facie case of gender discrimination, Plaintiff must show: "(1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) these are facts that give rise to an inference of unlawful gender discrimination."   *DePriest v. Milligan*, 823 F.3d 1179, 1185-86 (8th Cir. 2016) (internal quotation marks and citations omitted).   "The burden then shifts to [the] defendant to articulate a

legitimate, nondiscriminatory reason for its action.  If [the] defendant meets that minimal burden, [the] plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful…discrimination." *Id.* (internal quotations marks and citation omitted).

To establish a claim of age discrimination in violation of the ADEA, Plaintiff must show that she:  "(1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting [her] employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger." *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 763-64 (8th Cir. 2021) (internal quotation marks and citations omitted).  "If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer proffers such a reason, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext for discrimination and that age was the 'but-for' cause of the challenged adverse employment action." *Id.* (internal quotation marks and citations omitted).

Claims of disability under the ADA are also analyzed under the *McDonnell Douglas* burden-shifting framework.  Thus, Plaintiff first must establish a prima facie case of discrimination by demonstrating "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job [with or without a reasonable accommodation]; and (3) a causal connection between an adverse employment action and the disability." *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (internal quotation marks and citation omitted).  If the plaintiff succeeds, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the employer is able to do so, "[t]he burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for

discrimination." *Id.* (citation omitted).

Finally, Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). Pursuant to the *McDonnell Douglas* burden-shifting framework, the employee has the initial burden of establishing a prima facie case of retaliation, which she meets by showing that, "(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citation omitted). "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden then shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Id.* (internal quotation marks and citations omitted).

### B. Claims

#### 1. Claim 1

In claim 1 Plaintiff asserts that on July 17, 2013, she and Cune were having a conversation about upcoming vacations, and Plaintiff mentioned that her church group was going to New Orleans. (*See* Defendant's Facts, ¶ 36, citing Defendant's Exh. A, ECF No. 36-1, Plaintiff's January 27, 2015 Dep. at 14:13-25, 15:1-6, 23-25). Cune told Plaintiff they needed to visit Paula Deen's restaurant, which Plaintiff interpreted as "very derogatory and racist" because Deen had been in the news regarding her comments about African-Americans. (*Id.*, ¶¶ 36-37, citing Defendant's Exh. A at 16:1-4, 19:12-19; Defendant's Exh. B, ECF No. 37-1, EEO Hearing

Transcript Dated October 19, 2016, at 31:9-11, 12-14).  Plaintiff acknowledged, however, that

she did not know if Cune knew anything about Deen's legal proceedings when she made the

comment.  (*Id.*, ¶ 39, citing Defendant's Exh. B at 37:14-15).  She further admitted that prior to

the Deen statement, Cune had never made any derogatory comments to Plaintiff about her race,

color, sex, age, disability, or prior EEO activity.  (*Id.*, ¶ 38, citing Defendant's Exh. D at 49:10-

25).  Plaintiff thus fails to establish that Cune was motivated by discriminatory animus when she

made the statement.  *See Palesch v. Missouri Com'n on Human Rights*, 233 F.3d 560, 567-68 (8th

Cir. 2000) ("[Plaintiff] offers little more than speculation and conjecture to make the required

connection from the mistreatment she alleges to a gender or race-based animus.  [Plaintiff] has

failed to create a material issue of fact concerning whether she was subjected to workplace

harassment because of either her race or gender.").

The Court further finds that with claim 1, Plaintiff fails to establish she suffered an

adverse employment action.  Under Eighth Circuit law,

> An adverse employment action is a tangible change in working conditions
> that produces a material employment disadvantage.  This might include
> termination, cuts in pay or benefits, and changes that affect an employee's
> future career prospects.   [Plaintiff] need not prove that [s]he was
> terminated to demonstrate an adverse action; however not everything that
> makes an employee unhappy is an actionable adverse action.   Minor
> changes in duties or working conditions, even unpalatable or unwelcome
> ones, which cause no materially significant disadvantage, do not rise to the
> level of an adverse employment action.

*Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (internal quotation marks and citations

omitted).  Here, Plaintiff testified that she did not experience any change in job title, benefits, or

pay as a result of the Deen statement, but merely took a break and retreated to her car "because

[she] was hurt." (*See* Defendant's Facts, ¶ 44, citing Defendant's Exh. D at 55:14-25, 56:1-10). Plaintiff's claims of discrimination and retaliation in ground 1 must therefore be dismissed.[7]

### 2.   Claim 2

In claim 2 Plaintiff alleges she suffered discrimination based on race, color, sex, age and retaliation when, on October 23, 2013, Chenot e-mailed Rose about Plaintiff's interest in becoming a supervisor, and on October 28 and November 18, 2013, Rose ignored Plaintiff's inquiries about the email (and Plaintiff was not selected for the position). As an initial matter, Plaintiff does not dispute Defendant's contention that Plaintiff's claims based on sex, color and race all fail because Williams, the woman hired into the position, was the same sex, color and race as Plaintiff. (*See* Defendant's Memo in Support, P. 26; Defendant's Facts, ¶¶ 2, 212).

The Court assumes without deciding that with claim 2, Plaintiff has established a prima face case of age discrimination[8] and/or retaliation. Defendant responds that Rose, the person in charge of selection, made the employment decision before she even knew of Plaintiff's interest in the position. (*See* Defendant's Facts, ¶ 255, citing Defendant's Exh. C, ECF No. 37-2, EEO Hearing Transcript Dated October 20, 2016 at 317:25, 318:1-2). Defendant further posits that the 204B position was responsible for carrier supervision and required doing carrier duties, and Plaintiff admitted she had no experience in those areas. (*See Id.*, ¶ 251, citing Defendant's Exh. C at 354:24-25, 355:1-4; ¶ 4, citing Defendant's Exh. D at 13:23-24, 14:5-11). Finally, Defendant offers evidence that attendance and prior disciplinary history were the main criteria for consideration as a 204B supervisor, and Plaintiff's attendance was under review from February, 2012, to December, 2014, because she had a total of forty-one occurrences of

---

[7] In claims 1 and 10, Plaintiff references allegedly racist statements directed to third parties. Those claims are addressed in section III, *infra*.

[8] The woman selected for the 204B position, Williams, was thirty-three years old in 2013, about fourteen years younger than Plaintiff. (*See* Defendant's Facts, ¶ 212).

unscheduled leave totaling 276.26 hours.  (*See Id.*, ¶ 252, citing Defendant's Exh. C at 315:18-19, 338:24-25, 339:3-5; ¶ 6, citing Defendant's Exh. JJ at 1-2).  With these assertions, the Court finds Defendant successfully articulates a legitimate, nondiscriminatory reason for the adverse employment action.

The burden thus shifts back to Plaintiff to show that the proffered reason was mere pretext for discrimination or retaliation.  Plaintiff admits she never heard Rose make a derogatory statement based on her age.  (*See* Defendant's Facts, ¶ 18, citing Defendant's Exh. D at 29:13-17, 30:3-5).  Instead, she offers only her own opinion that Williams was picked "'[j]ust because she was younger.'"  (*Id.*, ¶ 68, quoting Defendant's Exh. D at 30:3-8).  Plaintiff's assertions regarding this and any perceived retaliation are "insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record."  *Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005) (citing *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (affirming grant of summary judgment because nonmoving party's only evidence to rebut motion was unsubstantiated statements in deposition)).  Defendant's Motion for Summary Judgment on claim 2 must therefore be granted.

### 3.   Claim 3

In claim 3 Plaintiff asserts she suffered discrimination when, on November 19, 2013, Dolan became angry with Plaintiff about the heat and nothing was done.  Plaintiff offers no evidence of circumstances permitting an inference of discrimination, as she admits Dolan did not call her anything racially derogatory during the exchange, nor did he say anything about her color, age, sex, disability or prior EEO activity.  (*See* Defendant's Facts, ¶ 76, citing Defendant's Exh. D at 108:22-25, 109:1-8, 110:19-25).  Furthermore, the Court again finds that with this claim Plaintiff fails to establish she suffered an adverse employment action.  In other words,

Plaintiff testified that she did not experience any change in job title, benefits, or pay as a result of Dolan's statements about the thermostat, nor did the incident alter her daily work schedule or prevent her from completing her shift that day.  (*See* Defendant's Facts, ¶ 82, citing Defendant's Exh. D at 138:20-24, 25, 139:1-4).  Plaintiff's claims of discrimination and retaliation in ground 3 must therefore be dismissed.

### 4.    Claim 4

In claim 4 Plaintiff asserts she suffered discrimination when, on January 21, and January 24, 2014, her leave requests were denied and she was charged leave without pay ("LWOP"). Specifically, Plaintiff claims that on January 21, 2014, she asked permission to take leave for January 24, so that she could take her mother to California to visit her dying uncle.  (*See* Defendant's Facts, ¶ 83, citing Defendant's Exh. A at 39:16-22, 42:7-10, 22-25, 43:1-2). Plaintiff turned in a leave slip on January 22, but Williams informed Plaintiff the leave was denied for service needs.  (*Id.*, ¶¶ 84, 85, citing Defendant's Exh. A at 43:3-6, 13-15. 19-21, 44:1, 24-25, 45:1-5; Defendant's Exh. B at 46:7-9, 94:7-9; Defendant's Exh. CC; Defendant's Exh. R at 16, 63).  Plaintiff acknowledged no one said anything derogatory about her race, color, age, sex, disability or prior EEO activity in denying the leave request, but contends Williams denied the leave as a form of retaliation.  (*Id.*, ¶¶ 86, 87, citing Defendant's Exh. D at 149:25, 150:1-25, 151:1-2, 145:23-25; Defendant's Exh. B at 47:6-15).  Plaintiff testified that she wound up taking emergency annual leave ("EAL") for the day on January 24, 2014, and while she allegedly was informed she would be charged LWOP, instead she received EAL for which she was paid.  (*Id.*, ¶¶ 89-92, citing Defendant's Exh. A at 46:18-21, 22-25, 50:4-5, 8-10, 47:1, 8-13, 51:24-25, 52:1-4; Defendant's Exh. B at 48:10-11, 50:17-19, 98:6-7, 99:15-17; Defendant's Exh.

D at 152:7, 154:14-16; Defendant's Exh. Q at p. 11 q. 43; Defendant's Exh. DD; Defendant's Exh. R at p. 20, q. 76-77).

Once again the Court finds that with this claim, Plaintiff fails to establish she suffered an adverse employment action.  In other words, while Plaintiff alleges she was charged with LWOP, her own testimony confirms she was not, but instead received paid EAL.[9]  Plaintiff thus did not experience any change in job title, benefits, or pay as a result of the situation, and so her claims of discrimination and retaliation in ground 4 must be dismissed.

### 5.    Claim 5

In claim 5 Plaintiff asserts she suffered discrimination based on race, color, sex, age, and retaliation (prior EEO activity) when, on February 5, 2014, Jarrett created a fraudulent FMLA number.  The facts underlying this claim are as follows:  Plaintiff had two FMLA numbers—one for her mother's dependent care, and one for her own medical condition.  (*See* Defendant's Facts, ¶ 95, citing Defendant's Exh. A at 59:16-17; Defendant's Exh. B at 99:25, 100:1-5).  Plaintiff had both numbers around February, 2014, and she testified that it was time for her to submit her annual documentation to the Postal Service for her own number.  (*Id.*, ¶¶ 96, 97, citing Defendant's Exh. A at 58:20-25, 59:1-10, 60:16-25, 61:1-4; Defendant's Exh. B at 100:9-13).  Plaintiff took FMLA leave from January 30, 2014, to February 4, 2014, to attend her uncle's funeral in California.  (*Id.*, ¶ 98, citing Defendant's Exh. A at 57:7-8, 9-15).  When she returned to work on February 5, she learned that rather than using Plaintiff's existing FMLA number, Jarrett had created a new number.  (*Id.*, ¶ 99, citing Defendant's Exh. A at 58:3-6, 7-12).  Plaintiff testified that the incident was eventually straightened out, however, and she was provided paid FMLA leave under the correct number for the time she was absent.  (*Id.*, ¶ 100,

---

[9] Plaintiff was not charged with being Absent Without Leave either.  (*See* Defendant's Facts, ¶ 91, citing Defendant's Exh. D at 151:6-8).

citing Defendant's Exh. A at 72:1-6, Defendant's Exh. B at 55:9-16; Defendant's Exh. D at 158:12-14).

Upon consideration the Court finds that with this claim, Plaintiff again fails to establish that she suffered an adverse employment action. Jarrett testified that whenever she received a request for FMLA leave, she would look for a pending or approved FMLA number, and if none was found she would generate a new number. (*See* Defendant's Facts, ¶ 271, citing Defendant's Exh. C at 362:19-23). While Jarrett admitted she created a new FMLA number for Plaintiff, she explained that doing so was a mistake, caused by the fact that Plaintiff's existing FMLA number had expired and there was no indication for a pending number. (*Id.*, ¶ 272, citing Defendant's Exh. C at 363:5-10, 12-20). When Plaintiff brought the error to Jarrett's attention, she replaced the new FMLA number with the one previously used by Plaintiff. (*Id.*, ¶ 273, citing Defendant's Exh. C at 363:23-25, 380:5-7). Plaintiff was paid for her FMLA leave, and thus suffered no change in job title, benefits, or pay as a result of the situation. Her claims of discrimination and retaliation in ground 5 will therefore be dismissed.

### 6.    Claim 6

In claim 6 Plaintiff asserts she suffered discrimination based on race, color, sex, age, disability, and retaliation (prior EEO activity) when, on April 1, 2014, Williams denied Plaintiff a break. The facts underlying Plaintiff's claim are as follows: Plaintiff typically started her work day at 8:45 a.m., and ended at 5:45 p.m. (*See* Defendant's Facts, ¶ 103, citing Defendant's Exh. A at 73:13-17). She received two ten-minute breaks during the day, which she normally took around 11:00 a.m. and 3:40 p.m. (*Id.*, citing Defendant's Exh. A at 74:5-6, 10-11).[10]

---

[10] Plaintiff did not notify management when she went on break. (Defendant's Facts, ¶ 104, citing Defendant's Exh. A at 78:16-20; Defendant's Exh. D at 161:18-20).

On April 1, 2014, at approximately 3:05 p.m., Plaintiff's son came to the post office. (*Id.*, ¶ 106, citing Defendant's Exh. A at 78:12-13). Because there were no other customers, Plaintiff went to the lobby and helped her son for about five minutes. (*Id.*, citing Defendant's Exh. A at 76:23-25, 77:24-25, 78:1; Defendant's Exh. D at 162:13-16). After speaking with her son, Plaintiff returned to work until she went on break at 4:00 p.m. (*Id.*, citing Defendant's Exh. D at 163:1-8). While Plaintiff was on her break, Williams called to her and said she needed to return to work. (*Id.*, ¶ 108, citing Defendant's Exh. A at 75:12-22, 80:13-22, 81:1-3, 4-7; Defendant's Exh. D at 165:18-21, 166:5-6). When Plaintiff responded that she was on break, Williams said she thought Plaintiff had already taken her break. (*Id.*, citing Defendant's Exh. A at 75:22-23, 76:19-22, 77:15-16, 22-24; Defendant's Exh. D at 168:17-23). After going back and forth with Williams, Plaintiff eventually returned to her window and was not able to take another break that day. (*Id.*, ¶ 109, citing Defendant's Exh. A at 76:1, 81:17-23, 82:14-18).

Upon consideration the Court finds that Plaintiff's claim fails, for two reasons. First, she does not demonstrate she suffered an adverse employment action. In other words, while Plaintiff may have missed a portion of one break, that loss was not enough to alter a term, condition or privilege of her employment. Second, Plaintiff cannot show circumstances permitting an inference of discrimination, as she herself testified that she believed the situation resulted from a miscommunication between Plaintiff and Williams. (*Id.*, ¶ 114, citing Defendant's Exh. D at 184:23-24).[11] Defendant's Motion for Summary Judgment on claim 6 will therefore be granted.

7.    **Claim 7**

---

[11] Plaintiff acknowledged that Williams made no derogatory comments regarding Plaintiff's race, color, age, sex, disability or prior EEO activity during their exchange. (Defendant's Facts, ¶ 110, citing Defendant's Exh. D at 169:7-19).

In claim 7 of her Amended Complaint Plaintiff alleges she suffered discrimination based on race, color, sex, age, disability and retaliation when, on April 3, 2014, Williams gave Plaintiff a pre-disciplinary interview ("PDI"). Williams informed Plaintiff and her shop steward that the PDI was for Plaintiff's failure to return to the window when asked on April 1. (*See* Defendant's Facts, ¶ 115, citing Defendant's Exh. A at 83:15-18, 24-25, 84:1-2; Defendant's Exh. B at 116:20-23). While a PDI can lead to other discipline, in this instance Plaintiff was not disciplined; instead, she and Williams came to an agreement that in the future Plaintiff would inform Williams when she went on break. (*Id.*, ¶¶ 116-118, citing Defendant's Exh. B at 105:8-9, 108:1-6, 106:21-25, 107:1-9; Defendant's Exh. A at 86:5-18; Defendant's Exh. D at 187:15-24).

Once again the Court finds that with this claim, Plaintiff fails to establish she suffered an adverse employment action. In other words, she did not experience a change in job title, benefits or pay, and she admittedly continues to go on break at the same times each day. (*Id.*, ¶ 119, citing Defendant's Exh. D at 187:25, 188:1-13). Claim 7 is denied.[12]

### 8.    Claim 8

In claim 8 of her Amended Complaint Plaintiff alleges she suffered discrimination based on race, color, sex, age, disability and retaliation when she was denied training. Specifically, Plaintiff testified that at times she would act as a facilitator downtown and train new window clerks. (*See* Defendant's Facts, ¶ 120, citing Defendant's Exh. B at 43:18-20; Defendant's Exh. D at 191:16-21, 192:6-11). She testified that she would go downtown one to two times per month, and would teach anywhere from two to twenty students about the basics of being a

---

[12] As further support for its ruling the Court notes that once again, Plaintiff offers no proof that Williams conducted the PDI based on any discriminatory grounds. To the contrary, Defendant posits that Williams acted expressly per Section 665.15 of the Postal Service regulations, which states that an employee must obey a supervisor's instructions. (*See* Defendant's Facts, ¶ 232).

window clerk.  (*Id.*, ¶ 122, citing Defendant's Exh. D at 193:21-22, 194:5-9, 13-14).  Plaintiff was not paid to train, but was a volunteer.  (*Id.*, ¶ 123, citing Defendant's Exh. D at 196:13, 197:6-7).  Without providing an exact time frame, Plaintiff claims she was denied training sometime around 2013 to 2014.  (*Id.*, ¶ 124, citing Defendant's Exh. A at 86:23-25, 87:1; Defendant's Exh. D at 198:1-3, 24-25, 199:1).

The Court assumes without deciding that with this claim, Plaintiff presents a prima facie case of discrimination and/or retaliation.  The burden thus shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Richard Scaife ("Scaife"), another of Plaintiff's supervisors, testified that the reason Plaintiff was not allowed to train was because they had staffing issues at the Maryland Heights post office.[13]  (*See* Defendant's Facts, ¶ 210, citing Defendant's Exh. B at 208:15-16).  Rather than showing the proffered justification was merely a pretext for discrimination, Plaintiff acknowledged Scaife gave her the same reason when explaining that she could not go downtown.  (*Id.*, ¶ 126, citing Defendant's Exh. D at 200:16, 201:11-13).  She further indicated Scaife did not say anything derogatory about her race, color, sex, age, disability or prior EEO activity in denying her training requests.  (*Id.*, citing Defendant's Exh. D at 202:11-25).  Under these circumstances, Defendant's Motion for Summary Judgment on claim 8 must be granted.

### 9.   Claim 9

In claim 9 Plaintiff asserts she suffered discrimination based on race, color, sex, age, and disability when, on April 6, 2015, Cune verbally accosted her.  On that date Mitchell and Simmons, two African-American 204B supervisors, called Plaintiff and Cune into the office.

---

[13] Defendant notes Plaintiff was permitted to train again as of October, 2016, because the staffing situation at the Maryland Heights post office had changed.  (Defendant's Facts, ¶ 211, citing Defendant's Exh. B at 238:8-25, 239:1-2).

(*See* Defendant's Facts, ¶ 129, citing Defendant's Exh. B at 64:6-11, 115:12-20).  Mitchell asked Plaintiff and Cune questions, in an attempt to find common ground between the two women. (*Id.*, ¶ 130, citing Defendant's Exh. B at 64:12-13, 24-25; Defendant's Exh. D at 213:3-4).  At one point during the meeting Plaintiff pointed at Cune, who started yelling at Plaintiff and said she was "'lucky [Simmons is] holding me back.'"  (*Id.*, ¶ 131, quoting Defendant's Exh. B at 65:2-5; Defendant's Exh. D at 216:2-6).  When Plaintiff asked if Cune was threatening her, Simmons grabbed Cune by the arm and removed her from the office.  (*Id.*, citing Defendant's Exh. B at 65:6-9; Defendant's Exh. D at 216:6-12).

Upon consideration the Court finds Plaintiff's claim fails, for two reasons.  First, she again fails to demonstrate she suffered an adverse employment action as a result of the interaction.  In other words, while Plaintiff testified that the meeting was "stressful", she continued to state it did not prevent her from completing her workday, nor did she experience a change in job title, pay or benefits.  (*Id.*, ¶ 136, citing Defendant's Exh. D at 224:7-15).[14] Second, Plaintiff cannot show circumstances permitting an inference of discrimination, as she herself testified that neither Cune, Mitchell nor Simmons made any derogatory statements about her race, color, age, sex, disability or prior EEC activity during the meeting.  (*Id.*, ¶¶ 132, 133, citing Defendant's Exh. D at 217:6-25, 218:1, 219:18-25, 220:1-7, 13-25).  Defendant's Motion for Summary Judgment on claim 9 will therefore be granted.

### 10.   Claim 11

In claim 11 of her Amended Complaint Plaintiff asserts she suffered discrimination based on race, color, sex, age and disability when, on May 14, 2015, Cune backed her truck into

---

[14] Plaintiff's feeling of stress was not enough to alter a term, condition or privilege of her employment, and she acknowledged she did not experience any change in job title, pay or benefits as a result of her interaction with Cune.  (Defendant's Facts, ¶ 136, citing Defendant's Exh. D at 224:7-15).

Plaintiff's car.  On that day, Plaintiff was leaving for the Bridgeton post office to help with getting new equipment.  (*See* Defendant's Facts, ¶ 144, citing Defendant's Exh. D at 264:4-10).  When she went outside to the parking lot, she discovered that Cune had backed her truck into Plaintiff's car.  (*Id.*, citing Defendant's Exh. D at 244:20-25, 245:16-19).  Mitchell and Simmons came outside, and Mitchell contacted the Maryland Heights Police Department, which dispatched an officer.  (*Id.*, ¶¶ 146, 148, 149, citing Defendant's Exh. B at 69:14-16, 21-22; Defendant's Exh. C at 426:19-23; Defendant's Exh. D at 246:5-6; Defendant's Exh. KK at 1).  Plaintiff took her car into the Nissan dealer, and discovered the only damage was to the license plate.  (*Id.*, ¶ 153, citing Defendant's Exh. B at 72:2-5; Defendant's Exh. D at 251:12-15).

Once again the Court finds Plaintiff's claim fails, because she cannot demonstrate she suffered an adverse employment action.  In other words, while the car incident prevented Plaintiff from going to the Bridgeton post office, it did not affect her job title, pay, or benefits, nor did it prevent her from completing her workday.  (*Id.*, ¶ 156, citing Defendant's Exh. D at 269:1-5, 10-15).  Defendant's Motion for Summary Judgment on claim 11 will therefore be granted.

## III.   <u>Hostile Work Environment Claims</u>

As the Court construes Plaintiff's Amended Complaint, she further claims harassment/hostile work environment on the bases of race, color, gender, age, disability, and/or retaliation.  "'[T]o establish a hostile work environment….plaintiff must show that (1) she is a member of the class of people protected by the statute, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class[15], and (4) the harassment was severe enough to affect the terms, conditions or privileges of her employment.'"

---

[15] As explained *supra*, for the majority of her claims Plaintiff fails to demonstrate that the alleged harassment resulted from her membership in the protected class in the first instance.

*Johnson v. Robert McDonald Secretary Department of Veterans Affair*, No. 4:15CV1869 CAS, 2016 WL 5870061, at *5 (E.D. Mo. Oct. 7, 2016) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)).

As to the fourth element, "[i]n order to be actionable, harassment must be both subjectively hostile[16] or abusive to the victim and 'severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive.'" *Shaver v. Independent Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "Anti-discrimination laws do not establish codes of civility in the workplace and '[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law.'" *Johnson*, 2016 WL 5870061, at *5 (citation omitted). In order to determine whether the harassment affected a term, condition or privilege of employment, courts must "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Sellers*, 791 F.3d at 945 (internal quotation marks and citation omitted).

"'The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment.'" *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Al-Zubaidy v. TEK Indus., Inc.,* 406 F.3d 1030, 1038 (8th Cir. 2005)).

> The stringent hostile work environment standard is designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing. [M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment. The plaintiff must show that the alleged harassment was so

---

[16] Defendant does not dispute that Plaintiff subjectively believes she suffered harassment at the Maryland Heights post office. (*See* Defendants' Memo in Support, P. 7).

> intimidating, offensive, or hostile that it poisoned the work environment. [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

*Id.* at 922-23 (internal quotation marks and citations omitted).

Upon consideration, the Court finds that "the conduct about which [Plaintiff] complains is not severe enough to support [her] hostile work environment claim." *Id.* at 922 (internal quotation marks and citation omitted). In other words, while the complained-of conduct can be characterized as rude or unpleasant, it was not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. *Id.* at 923. *See also Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (internal quotation marks and citations omitted) ("The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace….On their face, [the] comments are best characterized as offensive, but not so severe or pervasive as to permeate the workplace."). This portion of Defendant's Motion for Summary Judgment will therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Megan J. Brennan's Motion for Summary Judgment (ECF No. 34) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Cross Summary Judgment (ECF No. 39) is **DENIED**.


Dated this <u>21st</u> Day of April, 2021.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE